UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-14031-CR-MOORE/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TOMMY LEE CARTER,

    Defendant.
_____/



FILED by _____ D.C.

SEP 11 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON PRELIMINARY HEARING AND FINAL HEARING ON PETITION ALLEGING VIOLATIONS OF SUPERVISED RELEASE [D.E. #158]

**THIS CAUSE** having come on to be heard for an evidentiary hearing on September 11, 2014 in respect to the pending Petition Alleging Violations Of Supervised Release [D.E. #158] and this Court having conducted a Detention Hearing, preliminary hearing and final hearing simultaneously at that time, and all parties having been present and agreeing to proceed in that fashion, this Court makes the following recommendations to the District Court:

    1.    The Petition alleges three violations of supervised release which are as follows:

| | |
|---|---|
| **Violation Number 1** | **Violation of Standard Condition**, by failing to answer truthfully all inquiries by the probation officer. On August 12, 2014, the defendant was questioned about changing his residence. He informed he had not located a new residence and had not moved yet, when in fact, evidence indicates this to be false. On August 13, 2014, I attempted a home visit at his approved residence and found it to be vacant. |
| **Violation Number 2** | **Violation of Standard Condition**, by failing to notify the probation office of a change in residence. On or about August 11, 2014, the |

|  |  |
|---|---|
|  | defendant moved from his approved residence of 828 Troy Boulevard, West Palm Beach, Florida, and failed to notify the probation officer 10 days prior to any change. |
| **Violation Number 3** | **Violation of Standard Condition**, by failing to notify the probation office of any change or residence. On or about August 11, 2014, the defendant moved from his approved residence of 828 Troy Boulevard, West Palm Beach, Florida, and his present whereabouts are unknown. |

2. The sole witness called by the government was David Sutherland, the Defendant's United States Supervising Probation Officer. Since the Defendant was residing in West Palm Beach, Mr. Sutherland of the West Palm Beach Office was his supervising probation officer.

3. The Defendant began supervision on or about July 3, 2014 after being released from the halfway house. USPO Sutherland first met with the Defendant on July 8, 2014 at his residence located at 828 Troy Boulevard, West Palm Beach, Florida. At that time, USPO Sutherland instructed the Defendant on his conditions of supervised release. The Defendant was residing at that residence with his girlfriend, Latoya Lewis and her children.

4. USPO Sutherland testified that he had four visits to that residence. Those visits were at the initial contact on July 8, 2014 and July 17, 2014. Those are the only two times that USPO Sutherland had contact with the Defendant at that residence. There was also a visit USPO Sutherland made to the residence on July 3, 2014 to approve the residence prior to the Defendant being released from the halfway house. The fourth

2

visit occurred on or about August 13, 2014 when USPO Sutherland went to the residence and discovered that the Defendant had moved from that residence without approval.

5. USPO Sutherland received a phone call from Ms. Lewis on or about July 22, 2014 advising USPO Sutherland that the Defendant and her family may have to move soon from that residence. USPO Sutherland advised Ms. Lewis that the Defendant needed to get approval of any move as well as approve any new residence in advance.

6. The Defendant appeared for urinalysis on August 12, 2014. At that time, USPO Sutherland discussed with the Defendant the call he received from Ms. Lewis about the Defendant moving from the residence. The Defendant stated that they had not moved from the residence. USPO Sutherland advised the Defendant that he needed prior approval from USPO Sutherland before moving from the residence.

7. Shortly after this visit on August 12, 2014, USPO Sutherland received a call from a court security officer at the courthouse that whenever the Defendant arrives at the courthouse he is "disrespectful" to the court personnel and did not even know the name of his probation officer. USPO Sutherland went to the Defendant's residence the following day on August 13, 2014 to discuss this with the Defendant. Upon arriving at the Defendant's residence located at 828 Troy Boulevard, West Palm Beach, Florida, USPO Sutherland could see through the living room window that the house was vacant and all furniture that he previously observed at that residence during his prior home visits was in fact removed.

8. There was a sign in the residence indicating that it was for rent. USPO Sutherland called that number and spoke with the person purporting to be the landlord. That landlord advised that the Defendant and his family had moved out the previous

Sunday and that the landlord had no idea where the Defendant was at that time. USPO Sutherland called Ms. Lewis' telephone which was the only contact point that USPO Sutherland had for the Defendant. The voicemail indicated that the mailbox was full and no contact was able to be made with the Defendant or Ms. Lewis.

9. After confirming this information, USPO Sutherland presented a Petition to Chief Judge Moore who issued the Petition and a warrant for the Defendant's arrest. Subsequent to when the arrest warrant was issued on August 18, 2014, the Defendant responded to the U. S. Probation Office for normal urinalysis per Code-A-Phone. The Defendant appeared and fulfilled his obligations at the U. S. Probation Office in that regard on August 28, 2014. When this Court asked USPO Sutherland why the Defendant was not arrested at that time since the warrant had already been issued ten days prior, USPO Sutherland said that there was a "mixup" in his office and that the Defendant was not taken into custody after leaving his urine specimen. The court security officers told USPO Sutherland that they thought that the Defendant had already been arrested and had been released on bond when he reported on August 28, 2014.

10. The Defendant was then ordered to report per Code-A-Phone for another urinalysis on September 3, 2014. The Defendant did so and was arrested at that time. It is noted also by USPO Sutherland that the Defendant always reported for urinalysis per Code-A-Phone as ordered even after he had moved from his residence. All urinalysis samples had been negative.

11. When the Defendant did report on September 3, 2014 and was later arrested, the Defendant stated that he had never moved from the residence and was "secretly living" in a back room of the residence at 828 Troy Avenue in West Palm Beach. The Defendant

also told USPO Sutherland that he and Ms. Lewis had called USPO Sutherland and USPO Sutherland had not returned those calls. USPO Sutherland denies that. The Defendant also told USPO Sutherland that he called some probation officer in the Miami office who advised the Defendant that the Defendant could move and just later let USPO Sutherland know.

12. USPO Sutherland did contact his Miami office and spoke with the United States Probation Officer who spoke with the Defendant. That officer advised USPO Sutherland that he did receive a call from the Defendant, but that the Defendant was advised that he needed to contact USPO Sutherland prior to moving from his residence and get approval.

13. The Defendant was identified in court at these hearings by USPO Sutherland.

14. Ms. Birch, counsel for the Defendant, provided USPO Sutherland with a new address for the Defendant on September 8, 2014. That residence is located at 2001 S.E. Talwood in Port St. Lucie, Florida, where Ms. Lewis and her family reside. USPO Sutherland has checked out that residence and has apparently approved that residence if the Defendant is released on bond.

15. The government presented no further witnesses. The Defendant presented no witnesses or evidence. The only argument by Ms. Birch was in respect to the request for detention. Ms. Birch stated on the record that she had no argument or evidence to submit in respect to the violations of supervised release.

16. So the Court has an understanding of why the Defendant was released on bond, Ms. Birch argued that Ms. Lewis, the Defendant's girlfriend, was present at these hearings. She is willing to co-sign any bond. This Court set a Fifty Thousand Dollar

($50,000.00) personal surety bond requiring Ms. Lewis to co-sign the bond and appointing Ms. Lewis as a third party custodian. This Court explained to Ms. Lewis on the record that should she become aware of any violations of supervised release which are conditions of the Court's bond, that she is charged with immediately notifying USPO Sutherland of such violations. Ms. Lewis acknowledged this responsibility and stated that she would be willing to perform that task as a third party custodian as a condition of the Defendant being released on bond.

17. Additionally, the Defendant has a job at Tony Roma's in Jensen Beach, Florida. Ms. Birch has confirmed that the job is still open for the Defendant if released on bond. The Defendant has had no positive urinalysis results since being released from prison and has no new law violations.

18. As a result, this Court did set a Fifty Thousand Dollar ($50,000.00) personal surety bond with the Defendant reporting directly to his probation officer and not using Ms. Lewis as an intermediary to communicate with USPO Sutherland. The Defendant acknowledged this on the record when directed by the Court. Further, Ms. Lewis is to co-sign the bond and act as third party custodian as referenced above. Aside from these violations concerning moving from his residence without approval, the Defendant has not had any problems with his supervision. He has had negative urinalysis results, has apparently secured a job and another stable residence in this District. Additionally, even after moving from his residence in West Palm Beach, the Defendant continued reporting as directed by Code-A-Phone. Therefore, it does not appear to this Court that the Defendant is a risk of flight or was trying to avoid detection by USPO Sutherland or the other officers.

## ANALYSIS

19.     This Court finds that the government has established by a preponderance of the evidence each of the three violations set forth in the Petition. The Defendant did move from his approved residence without prior approval from his U. S. Probation Officer. The landlord confirmed this. The Defendant's concocted story that he was living in a back room is contradicted by the landlord who stated that the Defendant had moved previous to USPO Sutherland arriving at the residence on August 13, 2014 and there was a "For Rent" sign in the window. All furniture that USPO Sutherland had previously observed in the living room was gone from the residence. It is not the probation officer's obligation to go peek in every window in a residence to determine if someone is secreting themselves in another room.

20.     In respect to Violation Number 2, the government has established that violation as well by the Defendant's failing to advise his probation officer and get approval ten days prior to moving from his approved residence on Troy Boulevard.

21.     Finally as to Violation Number 3, while it may look to be the same violation as Violation Number 2, it is not. Violation Number 3 alleges that the Defendant's whereabouts were unknown subsequent to his moving from the residence on August 11, 2014 based upon the information received by USPO Sutherland from the Defendant's landlord. The Defendant's whereabouts were unknown until he was taken into custody on September 3, 2014. His whereabouts were still unknown even when he reported for urinalysis on August 28, 2014. He did report for that urinalysis, but since USPO Sutherland was in the field and not in his office at that time, the Defendant was not taken into custody due to a "mixup" in the U. S. Probation Office. Even though the Defendant appeared as

directed, the U. S. Probation Office still did not know the Defendant's residence or whereabouts.

**ACCORDINGLY,** this Court recommends to the District Court that the Defendant be found to have violated his supervised release in respect to each of the three violations listed in the Petition and that the Court set a sentencing hearing at its earliest convenience for final disposition of this matter.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, the United States District Judge assigned to this case. Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this _11th_ day of September, 2014, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. K. Michael Moore
AUSA Diana M. Acosta
AFPD Panayotta Augustin-Birch
U.S. Probation (USPO Sutherland)
U.S. Marshal